UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JASON BROOKS,<br><br>        Plaintiff,<br><br>    v.<br><br>TIKTOK INC., et al.,<br><br>        Defendants. | Case No. 2:25-cv-10171-JFW-JDE<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable John F. Walter, United States District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## INTRODUCTION

On October 18, 2025, Jason Brooks ("Plaintiff"), proceeding pro se, filed a Complaint against TikTok Inc. ("TikTok"), ByteDance Ltd. ("ByteDance"), the United States, and President Donald J. Trump (collectively, "Defendants") alleging violations of federal and state law based on TikTok's termination of his accounts, ban warning, and demonetization, claiming that TikTok's actions "were influenced by federal coercion." Dkt. 1 ("Complaint"). After reviewing

1

the Complaint under 28 U.S.C. § 1915(e)(2), on November 4, 2025, the undersigned issued an order finding the Complaint appeared subject to dismissal, providing Plaintiff options as to how to proceed, including an option to file an amended complaint if he believed he could cure the defects identified. Dkt. 5 ("Screening Order"). Plaintiff was cautioned that the "failure to timely file a fully compliant response" as directed in the Screening Order may result in the dismissal of this action. Id. at 16. Plaintiff did not timely file a response. As a result, on December 2, 2025, the undersigned issued a Report and Recommendation, recommending the action be dismissed. Dkt. 7 ("Report").

On December 8, 2025, the Court received Objections to the Report from Plaintiff. Dkt. 13. Four days later, on December 12, 2025, the Court received additional Objections (Dkt. 12, "Obj."), which appeared to be virtually identical. Liberally interpreting Plaintiff's Objections as a request to file an amended complaint, on December 30, 2025, the undersigned granted Plaintiff's request, withdrew the Report, and ordered Plaintiff to file a First Amended Complaint in compliance with Option 1 of the Screening Order. Dkt. 14.

On December 31, 2025, Plaintiff filed a First Amended Complaint against Defendants, reasserting his federal and state law claims. Dkt. 15 ("FAC"). As Plaintiff seeks to proceed in forma pauperis (see Dkt. 2, "IFP Request"), under 28 U.S.C. § 1915(e)(2), the Court must dismiss the FAC if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. For the reasons explained below, the undersigned recommends that the FAC be dismissed without further leave to amend.

## II.

## SUMMARY OF ALLEGATIONS

Plaintiff alleges as follows. Plaintiff is a digital content creator with several TikTok accounts. FAC ¶¶ 1-2. Two of his accounts were allegedly

terminated by TikTok in January and February 2025, even though he complied with TikTok's terms of service and community guidelines. Id. ¶ 3. He was allegedly denied an appeal in violation of the terms of service and his demand letter was ignored in violation of TikTok's mandatory pre-litigation process. Id. ¶¶ 4-5. In August 2025, his active account was demonetized, and he was issued a "ban warning" for violating the community guidelines, though he claims he did not violate the terms of service or any policy "when judged under a reasonable interpretation" of the terms of service and community guidelines. Id. ¶¶ 6, 8. Plaintiff's videos were flagged as "hate speech," "hateful behavior," and "violent extremism," but he claims they "consisted of ordinary commentary and satire on political and social issues." Id. ¶¶ 9, 11. His appeal was "denied instantaneously," "making it impossible that any meaningful review occurred." Id. ¶ 7. Plaintiff avers TikTok's "current algorithmic enforcement decisions . . . have become facially absurd and inconsistent with TikTok's stated standards, suggesting that the algorithm or moderation team was targeting Plaintiff's account because of his left-leaning political viewpoints rather than any legitimate violation." Id. ¶ 12. Based on "information and belief," Plaintiff claims it "disproportionately flags content associated with progressive or government-critical viewpoints." Id. ¶ 14. He cites TikTok's moderation logs, which allegedly show repeated "strikes" issued "within minutes of posting politically charged content, while other creators espousing opposing viewpoints faced no comparable penalties." Id. ¶ 13.

Plaintiff contends that TikTok's enforcement actions "were influenced by federal coercion exerted by the Trump Administration," "designed to demonstrate 'compliance' with administration expectations by suppressing speech deemed politically undesirable." FAC ¶¶ 19, 37, 47. On August 6, 2020, President Trump issued Executive Order 13942, later revoked by President Biden (see Exec. Order No. 14034, 86 Fed. Reg. 31423 (June 9,

3

2021)), to ban TikTok in the United States on the ground that it was a national security threat. See id. ¶ 20. Following this Executive Order, TikTok established "a compliance framework known as Project Texas, designed to satisfy federal regulators and permit the platform's continued U.S. operation." Id. ¶ 22. Under Project Texas, TikTok agreed to store all U.S. user data on Oracle-controlled servers located in Texas and "to subject its source code and recommendation algorithms to continuous monitoring by a government-approved third-party team," which was negotiated with the Committee on Foreign Investment in the United States and the Department of Commerce, "both of which retained review authority over algorithmic changes, access logs, and moderation protocols." Id. ¶ 23. Plaintiff alleges that through Project Texas, the federal government became an auditor inside TikTok's algorithmic core, resulting in federal supervision and approval over its moderation decisions and "state-influenced censorship." Id. ¶¶ 24-25.

In 2024, Congress enacted the Protecting Americans from Foreign Adversary Controlled Applications Act ("PAFACA"), which Plaintiff avers was enacted without evidence or assessment of a national security threat. FAC ¶¶ 26-27, 39. He claims PAFACA has not been enforced, showing the national security concern was pretextual, with the government instead negotiating a settlement allowing TikTok to continue operating under "extreme federal pressure of its algorithm and moderation systems." Id. ¶¶ 28, 40, 46. He alleges the Trump Administration sought to force the sale of TikTok's U.S. operations to U.S. firms, noting President Trump "publicly stated that he expected the U.S. Treasury to receive a 'finder's fee' from the deal," purportedly "demonstrat[ing] that the government's asserted national-security rationale was not consistently applied and that enforcement decisions were influenced by considerations unrelated to cybersecurity." Id. ¶¶ 29-30. Plaintiff claims President Trump "publicly stated that he sought to compel TikTok's sale and publicly commented

4

on exerting control over its algorithmic operation," "reflecting an intent to influence the platform's ownership and governance." Id. ¶ 31.

In September 2025, the White House issued a Fact Sheet announcing that TikTok would operate under "strict rules" ensuring its content was "free from improper manipulation," phrasing Plaintiff contends "mirrored prior 'disinformation' initiatives, confirming that the focus was content control, not cybersecurity." FAC ¶¶ 32-33. Plaintiff maintains the Trump Administration's "statements and negotiations reflect an effort to influence content moderation decisions beyond traditional national-security review." Id. ¶ 34. Plaintiff alleges that "[b]y maintaining statutory prohibition without enforcement while retaining the ability to exert influence, the government has created a regulatory structure that plausibly enables viewpoint-based pressure on speech." Id. ¶ 42.

## III.
## STANDARD OF REVIEW

A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Pleadings by pro se plaintiffs are reviewed liberally and afforded the benefit of the doubt. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (as amended). However, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In assessing whether a complaint states a viable claim, the Court applies the same standard as it would when evaluating a motion to dismiss under

1  Federal Rule of Civil Procedure ("Rule") 12(b)(6). See Rosati v. Igbinoso, 791
2  F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Rule 12(b)(6), in turn, is read in
3  conjunction with Rule 8(a). Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir.
4  2013). Under Rule 8, a complaint must contain a "short and plain statement of
5  the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Though
6  Rule 8 does not require detailed factual allegations, at a minimum, a complaint
7  must allege enough specific facts to provide both "fair notice" of the particular
8  claim being asserted and "the grounds upon which [that claim] rests." Bell Atl.
9  Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation omitted); see also
10 Iqbal, 556 U.S. at 678 (observing that Rule 8 standard "demands more than an
11 unadorned, the-defendant-unlawfully-harmed-me accusation"); Brazil v. U.S.
12 Dep't of Navy, 66 F.3d 193, 199 (9th Cir. 1995) (finding that even pro se
13 pleadings "must meet some minimum threshold in providing a defendant with
14 notice of what it is that it allegedly did wrong").

15      Thus, to survive screening, "a complaint must contain sufficient factual
16 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
17 Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is
18 plausible when the facts alleged support a reasonable inference that the plaintiff
19 is entitled to relief from a specific defendant for specific misconduct. Id.
20 Allegations "merely consistent with" a defendant's liability or reflecting only
21 "the mere possibility of misconduct" do not show "that the pleader is entitled
22 to relief," and thus are insufficient to state a claim that is "plausible on its
23 face." Id. at 678-79 (citations omitted). "Taken together, Iqbal and Twombly
24 require well-pleaded facts, not legal conclusions that 'plausibly give rise to an
25 entitlement to relief.' The plausibility of a pleading thus derives from its well-
26 pleaded factual allegations." Whitaker v. Tesla Motors, Inc., 985 F.3d 1173,
27 1176 (9th Cir. 2021) (internal citations omitted).
28

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. See, e.g., Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment).

## IV.
## DISCUSSION

### A.  Federal Claims

####   1.   Claim Six: First Amendment Violation

Plaintiff asserts a First Amendment claim against the United States, President Trump, and TikTok "as a State Actor," alleging that "[t]hrough Executive Order 13942 and the enactment of PAFACA, federal officials conditioned TikTok's continued operation in the United States on compliance with government-imposed oversight of its algorithmic and moderation systems." FAC ¶ 92. He avers that "Project Texas institutionalized continuous oversight of TikTok's content-ranking and removal processes" and this "entanglement converts TikTok's enforcement decisions—including those targeting Plaintiff's speech—into conduct taken under color of federal authority" as the "level of ongoing supervision exceeds ordinary regulatory

7

oversight and constitutes joint participation in content moderation decisions." Id. ¶ 94. The FAC fails to state a First Amendment claim.

As to TikTok, "[t]he Free Speech Clause of the First Amendment prohibits the government—not a private party—from abridging speech." Prager Univ. v. Google LLC, 951 F.3d 991, 996 (9th Cir. 2020); see also Children's Health Def. v. Meta Platforms, Inc., 112 F.4th 742, 753 (9th Cir. 2024) (explaining the First Amendment bars governmental abridgment of speech and "does not prohibit private abridgment of speech" (citation omitted)). But, in "exceptional cases" a private party "will be treated as a state actor for constitutional purposes." Children's Health, 112 F.4th at 754 (quoting O'Handley v. Weber, 62 F.4th 1145, 1155-56 (9th Cir. 2023)). In assessing whether a constitutional deprivation may be attributable to the federal government, the Court considers a two-step framework. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Children's Health, 112 F.4th at 754. The Court first looks at whether the alleged constitutional violation was caused by the "exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." Lugar, 457 U.S. at 937. The Court then considers whether the party charged with the deprivation is a person who may fairly be said to be a government actor. Id. There are four tests used to make this determination: (1) "the private actor performs a traditionally public function"; (2) the private actor is a "willful participant in joint activity" with the government; (3) "the government compels or encourages the private actor to take a particular action"; or (4) "there is a 'sufficiently close nexus' between the government and the challenged action." Children's Health, 112 F.4th at 754 (citations omitted). "[B]oth components of the test ask [the Court] to evaluate whether the nature of the relationship between the private party and the government is such that 'the alleged infringement of federal rights is fairly attributable to the

[government].'" Id. (alteration in original) (citation omitted). Stated differently, "a plaintiff must allege facts supporting an inference that the government 'is responsible for the specific conduct of which the plaintiff complains.'" Id. (citation omitted).

As to the first inquiry, Plaintiff has not tied the alleged constitutional deprivation to a right, privilege, or rule of conduct imposed by the federal government. Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 994 (9th Cir. 2013). The Court considers if the "source of the alleged constitutional harm" is "a state statute or policy." Children's Health, 112 F.4th at 754 (quoting Belgau v. Inslee, 975 F.3d 940, 947 (9th Cir. 2020)). Such requirement is satisfied where the private institution "enforce[s] a state-imposed rule" instead of "the terms of its own rules." Id. (quoting O'Handley, 62 F.4th at 1156). Here, Plaintiff challenges TikTok's "automated moderation system" censoring "content associated with progressive or government-critical viewpoints." FAC ¶¶ 12, 14. As in Children's Health, the "source of the alleged harm" is TikTok's own "community guidelines" policy (id. ¶ 8), not any provision of the federal government. See Lugar, 457 U.S. at 937-38 (explaining that the question is whether the policy at issue could be ascribed to a governmental decision); Naoko Ohno, 723 F.3d at 994 (analyzing the "source of the alleged constitutional harm"). Plaintiff has not plausibly alleged a "state-imposed rule" censoring "content associated with progressive or government-critical viewpoints." Again, Plaintiff refers to alleged federal government oversight generally, but provides no facts to support his speculative assertions that the federal government has conditioned continued operation on TikTok's compliance with its adoption of "moderation policies aligned with federal preferences" (id. ¶ 35), suppression of "speech deemed politically undesirable" (id. ¶ 37), and "ability to operate on alignment with political or ideological demands" (id. ¶ 45), despite notice of this defect in the Screening Order.

1 | Plaintiff has not shown that any specific actions TikTok took on its platforms were traceable to any actionable federal rule to censor certain viewpoints.

Plaintiff's failure to satisfy the first part of the test is fatal to his state action claim. See Children's Health, 112 F.4th at 755. However, as the Ninth Circuit has acknowledged that it has not been "entirely consistent on this point" (O'Handley, 62 F.4th at 1157), the Court proceeds to consider the second step. Here, Plaintiff contends TikTok's "moderation of [his] political videos was undertaken to display compliance with federal expectations and thus constitutes state action" and "TikTok's moderation of Plaintiff's political speech occurred in furtherance of this government-directed framework and to demonstrate compliance with federal expectations." FAC ¶¶ 95-96.

Plaintiff primarily contends TikTok is a state actor based on "coercive governmental involvement." See FAC ¶ 95. A private party may be considered a state actor "if it has acted because the government coerced or compelled it to do so." Children's Health, 112 F.4th at 759. Under the coercion test, the government must have "exercised coercive power or . . . provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Id. (alteration in original) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). The government must "convey a threat of adverse government action," or otherwise impose incentives that "overwhelm" and "essentially compel" the party to comply with its requests. Id. at 759 (citations omitted).

Once again, Plaintiff has not alleged facts plausibly showing that the federal government coerced TikTok into implementing a specific policy targeting speech critical of the government. Plaintiff alleges through Executive Order 13942 and PAFACA, "federal officials conditioned TikTok's continued operation in the United States on compliance with government-imposed oversight of its algorithmic and moderation systems." FAC ¶ 92. Plaintiff cites

10

TikTok's Project Texas, in which TikTok allegedly "institutionalized continuous oversight of TikTok's content-ranking and removal processes" and "convert[ed] TikTok's enforcement decisions—including those targeting Plaintiff's speech—into conduct taken under color of federal authority" (id. ¶ 94). Plaintiff claims, in conclusory fashion, that "TikTok's continued operation became contingent upon adopting moderation policies aligned with federal preferences." Id. ¶ 35. Again, however, Plaintiff offers no plausible factual allegations that the federal government coerced TikTok to regulate specific speech or viewpoints. As previously explained, Plaintiff's assertions regarding government oversight generally are insufficient to support the inference that the government pressured TikTok into taking any specific action with respect to speech critical to the government. All Plaintiff has alleged is that TikTok was aware of a generalized federal concern with "improper manipulation" by foreign influence and that TikTok took steps to address that concern. See Children's Health, 112 F.4th at 760. "If [TikTok] implemented its policy at least in part to stave off lawmakers' efforts to regulate, it was allowed to do so without turning itself into an arm of the federal government." Id. Plaintiff has not pled facts supporting a coercion theory of state action.

To the extent Plaintiff contends federal oversight resulted in joint action, Plaintiff must plead facts that give rise to an inference that TikTok's "particular actions are 'inextricably intertwined' with those of the government." Children's Health, 112 F.4th at 755 (citation omitted). Joint action exists when the government "has so far insinuated itself into a position of interdependence with a private entity that the private entity must be recognized as a joint participant in the challenged activity." Id. (citation omitted). This test is "intentionally demanding." O'Handley, 62 F.4th at 1159. "[I]t is not enough to show an agreement to do something; the private party and the government must also have agreed on what the something is." Children's Health, 112 F.4th

11

at 755. The plaintiff must show "some specificity to the understanding between the private actor and the government." Id. at 756.

Here, again, Plaintiff has not shown an agreement to suppress certain views. He alleges TikTok agreed to government oversight over its algorithm and moderation systems and a White House Fact Sheet announcing TikTok would operate under "strict rules" ensuring its content was "free from improper manipulation." See FAC ¶¶ 23-33. But nothing in these allegations support a reasonable inference that an agreement was made to regulate certain viewpoints, despite Plaintiff's speculation to the contrary. As in Children's Health, Plaintiff's allegations suffer from a "critical lack of specificity." 112 F.4th at 756. Ensuring content is "free from improper manipulation" could mean many different things. "The 'generic promotion of a public purpose' falls far short of establishing that [TikTok's] 'particular actions are inextricably intertwined with those of the government.'" Children's Health, 112 F.4th at 756 (citation omitted). As such, Plaintiff has not alleged state action sufficient to hold TikTok liable for a federal constitutional violation.[1]

Nor has Plaintiff stated a claim against the United States or President Trump. As noted, Plaintiff challenges TikTok's censorship of his accounts, claiming this is the result of government oversight. But, as explained, the FAC is devoid of facts supporting an assertion that the federal government censored or directed the censorship of particular viewpoints, let alone were involved in the censorship of Plaintiff's accounts. Plaintiff has not shown the United States or President Trump violated his First Amendment rights.

---

[1] As previously explained in the Screening Order, Plaintiff's claims against TikTok also may be barred by 47 U.S.C. § 230 and TikTok's own First Amendment rights. See, e.g., Castronuova v. Meta Platforms, Inc., 2025 WL 1914860, at *4-5 (N.D. Cal. June 10, 2025), appeal dismissed 2025 WL 2895601 (9th Cir. Aug. 15, 2025). As Plaintiff has not stated a federal claim against TikTok, it is unnecessary to address these issues.

  2. <u>Claim Seven: As-Applied Challenge to PAFACA</u>

In Claim Seven, Plaintiff asserts an as-applied challenge, alleging that PAFACA "chills [his] speech and forces TikTok to censor politically sensitive viewpoints. FAC ¶ 98. Claim Seven is largely identical to the original as-applied challenge in the initial Complaint. Plaintiff adds that he is not challenging "Congress's authority to enact national-security legislation in the abstract, but rather challenges PAFACA as applied through post-enactment executive conduct that transformed the statute into a mechanism of political coercion." <u>Id.</u> ¶ 98. Plaintiff's as-applied claim remains vague and conclusory.

An as-applied challenge "'focuses on the statute's application to the plaintiff,' and requires the court to only assess the circumstances of the case at hand." <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1203 (9th Cir. 2022) (quoting <u>Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.</u>, 979 F.3d 1209, 1217 (9th Cir. 2020)). Here, Plaintiff has alleged no facts plausibly showing that a particular provision of PAFACA has been unconstitutionally applied to him. He has not challenged a particular provision or shown how such provision has burdened his protected speech. Plaintiff's conclusory allegations remain insufficient to state a claim.

  3. <u>Claim Eight: Facial Challenge to PAFACA</u>

In Claim Eight, Plaintiff "challenges PAFACA as facially unconstitutional insofar as it authorizes ongoing executive coercion without temporal, procedural, or evidentiary limits, permitting indefinite suppression of protected speech without enforcement, adjudication, or judicial review, regardless of the subjective motivations of any individual official." FAC ¶ 101. He claims the statute's structure "permits indefinite non-enforcement coupled with coercive leverage, creating a system in which expressive platforms must comply with executive preferences to avoid adverse action." <u>Id.</u> ¶ 110.

As previously explained, facial challenges are disfavored (Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008)) and "hard to win." Moody v. NetChoice, LLC, 603 U.S. 707, 723 (2024). Though the standard is "less demanding" in the First Amendment context, it remains a "rigorous standard." Moody, 603 U.S. at 723. In such cases, the question is whether "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Id. (alteration in original) (citation omitted). A law with "a plainly legitimate sweep" may be struck down only if the law's unconstitutional applications "substantially outweigh its constitutional ones." Id. at 723-24.

A facial challenge to a statute involves a claim that the Legislature has violated the Constitution. Rodriguez Diaz, 53 F.4th at 1203. Plaintiff has made no such showing. Plaintiff has not shown a substantial risk that the application of a particular provision of PAFACA will lead to the suppression of speech. See Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998). Plaintiff points to no provision of PAFACA that created a coercive oversight scheme, or that such scheme "authorizes ongoing executive coercion without temporal, procedural, or evidentiary limits, permitting indefinite suppression of protected speech without enforcement, adjudication, or judicial review, regardless of the subjective motivations of any individual official." See FAC ¶¶ 101-102.

To the extent Plaintiff challenges PAFACA's divestiture provision, such challenge remains foreclosed by TikTok Inc. v. Garland, 604 U.S. 56 (2025) (per curiam). As in the Complaint, Plaintiff essentially seeks reconsideration of the findings made by the Supreme Court in TikTok Inc., arguing "[s]ubsequent executive conduct" shows the asserted national security threat is fictious and Project Texas renders PAFACA "immaterial to any legitimate national-security purpose." FAC at 17. As the Supreme Court explained in concluding PAFACA's divestiture provision did not violate the petitioners' First

14

Amendment rights, "Congress has determined that divestiture is necessary to address its well-supported national security concerns regarding TikTok's data collection practices and relationship with a foreign adversary." TikTok Inc., 604 U.S. at 80. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Id. at 77 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 800 (1989)). The Supreme Court found in TikTok Inc. that the government's policy was "grounded on reasonable factual findings supported by evidence that is substantial for a legislative determination," explaining that the provisions were "not substantially broader than necessary" to address the government's data collection concerns and did not ignore less restrictive approaches already proven effective. Id. at 78. The Court is bound by those findings. See Nunez-Reyes v. Holder, 646 F.3d 684, 692 (9th Cir. 2011) (en banc).

Further, Plaintiff has not shown Project Texas adequately addressed the national security concerns underlying PAFACA—preventing a designated foreign adversary, China, from leveraging its control over ByteDance to capture the personal data of U.S. TikTok users. TikTok Inc., 604 U.S. at 74. As explained in the Screening Order, such concern is not alleviated by giving the United States "real-time visibility" (FAC ¶ 104) if China continues to have access to the personal data of U.S. TikTok users. Nor has Plaintiff shown the government's failure to enforce PAFACA demonstrates its stated-security concerns are false. As explained, PAFACA was subject to a constitutional challenge that was only recently resolved by the Supreme Court and the settlement agreement to which Plaintiff refers may resolve the government's national security concerns, requiring any further enforcement unnecessary. Accordingly, Plaintiff has failed to state a facial challenge to PAFACA.

B. **State Claims**

Only state law claims remain, against TikTok and ByteDance only. While Plaintiff initially based subject matter jurisdiction on the federal claims, alleging supplemental jurisdiction over his state law claims, in his FAC, Plaintiff now claims subject matter jurisdiction on the basis of diversity. He alleges that he is a "citizen of Colorado"; TikTok is a Delaware corporation with its U.S. headquarters in Culver City, California; and ByteDance "is a foreign corporation and the parent company of TikTok, Inc." FAC at 2. The FAC fails to adequately show the parties are completely diverse.

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). A federal court is presumed to lack jurisdiction unless the contrary affirmatively appears. California ex rel. Younger v. Andrus, 608 F.2d 1247, 1249 (9th Cir. 1979) (per curiam). The burden of establishing jurisdiction rests upon the party asserting jurisdiction. Kokkonen, 511 U.S. at 377.

To establish citizenship for diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). Though Plaintiff alleges ByteDance is "a foreign corporation," he does not allege the country of incorporation or indicate where it has its principal place of business, noting instead that ByteDance "exercises ownership, control, and oversight over TikTok's platform architecture, content moderation systems, and algorithmic operations, and was a direct participant in negotiations and regulatory actions concerning TikTok's continued operation in the United States." See FAC at 1-2. Since a corporation

incorporated in a foreign country also is a citizen where it has its principal place of business, Plaintiff's citizenship allegations are inadequate. Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001) ("Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties."). As such, the undersigned recommends that the state law claims be dismissed for lack of subject matter jurisdiction. See Martin Baker Aircraft Co. v. Teledyne Risi, Inc., 2020 WL 5224344, at *1 (C.D. Cal. Apr. 30, 2020) (dismissing for lack of subject matter jurisdiction where plaintiff failed to allege where the foreign defendant corporation had its principal place of business).

## C. Further Leave to Amend Is Not Warranted

The foregoing deficiencies with Plaintiff's federal claims are not the result of inartful pleading; Plaintiff was advised of the same or similar defects that are again present in the FAC. Despite repeatedly describing himself as a "versed" pro se litigant with "thousands of hours of motions practice" (Obj. at 2, 7-8), Plaintiff's FAC again suffers from defects previously identified. As to the state law claims, Plaintiff's allegations of complete diversity are inadequate. Plaintiff has not demonstrated that the Court has jurisdiction over the state law claims. Plaintiff had multiple opportunities to specify ByteDance's principal place of business and has not so. Further leave to amend is not warranted. See, e.g., Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F., 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint."); Ismail v. County of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) ("[A] district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." (quoting DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 n.3 (9th Cir. 1987))).

17

## V.

## RECOMMENDATION

IT IS THERFORE RECOMMENDED that the District Judge issue an order: (1) approving and accepting this Report and Recommendation; (2) denying Plaintiff's IFP Request (Dkt. 2); and (3) directing that Judgment be entered dismissing the federal claims with prejudice and the state law claims without prejudice.

Dated: January 13, 2026

JOHN D. EARLY
United States Magistrate Judge